| Matter of Meehan |
|:---:|
| 2025 NY Slip Op 33778(U) |
| October 8, 2025 |
| Surrogate's Court, New York County |
| Docket Number: File No. 1994-1940.1 |
| Judge: Rita Mella |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |


SCANNED

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------x
In the Matter of the Accounting of Debra M. Cressotti,
As Administrator of the Estate of

       MURIEL C. MEEHAN,                     DECISION

                                         File No.: 1994-1940.1

                   Deceased.
-------------------------------------------------------------------------x
M E L L A, S.:

After a bench trial held on April 24, 2025, this decision determines the issues presented in this proceeding to settle the account of Debra A. Cressotti (Petitioner or Cressotti), as Administrator of the estate of Muriel C. Meehan.

Background

Decedent died on November 2, 1993, survived by five distributees: her nephew, Raymond E. Meehan (Raymond), and four nieces, Petitioner, Ruth W. Careccio (Ruth), Kathleen H. Haschke (Kathleen), and Patricia R. Meehan (Patricia). Petitioner was awarded letters of administration on June 9, 1994, on the consent of all distributees. On July 14, 2006, Dina Careccio (Dina), as the personal representative of the estate of Ruth, who had post-deceased, filed an application to compel Cressotti to account as Administrator, which was granted by the court on August 3, 2006. In March 2007, Petitioner filed her account for the period of November 2, 1993, through February 28, 2007 (Account). Dina, by her then counsel, filed verified objections to the Account on February 4, 2008.

It took Petitioner many years to obtain jurisdiction over all necessary parties in her accounting proceeding but once she did, and after several failed attempts to settle the matter, the court, by Decision and Order dated February 9, 2022, directed Petitioner to amend her petition and supplement her account to bring it down to date.

[* 1]

The Account

Petitioner's amended account, covering the period from November 2, 1993, through December 31, 2021 (Amended Account), and the amended petition for its judicial settlement (Amended Petition) were filed on June 22, 2022. The Amended Account indicated that two additional distributees, Kathleen and Raymond, were now deceased. Thus, the personal representative of the estate of Raymond and the distributees of Kathleen, Randall Haschke (Randall) and Robert Haschke (Robert) were joined as parties to this proceeding.

As pertinent here, the value of the estate assets, as reflected on Schedules A, AA, A-1 and A-2 of the Amended Account is $321,452.87, which includes an alleged loan that Petitioner made to the estate, as reflected on Schedule AA, in the amount of $27,993.27. Schedule C reflects paid administration expenses in the amount of $111,352, and Schedule C-1 reflects unpaid administration expenses in the amount of $9,649.17, representing Petitioner's unpaid commissions. Finally, Schedule E reflects that no distributions have been made to the beneficiaries. In the Amended Petition, Cressotti seeks approval of certain administration expenses, including legal fees, accounting fees, federal and state taxes and penalties, as well as her statutory commissions.

In January 2023, Patricia, Randall and Robert filed objections to the Amended Account as self-represented parties. Dina has also been participating as a self-represented party since October 14, 2022, when her counsel was given leave to withdraw, and she did not retain new counsel. After two conferences with the court, the parties agreed to exchange informal discovery concerning some of the issues in dispute as a possible avenue towards settlement. When the parties failed to reach a settlement, the court issued a Post-Objection Discovery Order on October 30, 2023, which established discovery deadlines as well as a deadline for the filing of

2

[* 2]

amended objections, if any. None of the Objectants, including Dina, filed amended objections by the deadline, nor did they seek leave to file amended objections after the deadline.[1]

The Objections

Dina's objections allege, among other things, that Petitioner failed to maintain proper records of her actions as Administrator and unreasonably delayed the administration of this estate, that Petitioner commingled estate assets with her own and used estate assets for her personal benefit and the benefit of her family, that Petitioner failed to marshal certain assets, and that Petitioner's request to be reimbursed for the loan she allegedly made to the estate should be denied. Additionally, Dina objected to the legal and accounting fees reflected in the Account on the grounds that they were excessive and unnecessary, and to the payment from estate assets of the penalties incurred for the late filing of taxes. For their part, Patricia, Randall, and Robert challenged, among other things, Petitioner's requests to be reimbursed for the loan, to retain a reserve for future legal fees, and to receive commissions because of her delay in the administration of this uncomplicated estate and her failure to distribute any estate assets. Additionally, Randall objected to Petitioner's request to pay penalties for late tax filings from estate assets.

---

[1] That Patricia, Randall, and Robert elected not to amend their objections is of no moment as they objected to the Amended Account. Dina, however, objected only to the original Account, which was superseded by the Amended Account. Nevertheless, since the issues Dina raised in her objections apply to the Petitioner's account, as amended, and Petitioner has not challenged her objections as procedurally infirm (on the ground that they are directed to an account that has been superseded), the court will deem Dina's objections to be objections to the Amended Account (*see Matter of Otto*, 32 Misc 3d 1244, 2011 NY Slip Op 51696[U] [Sur Ct, New York County 2011], *affd* 96 AD3d 433 [1st Dept 2012]).

3

Pretrial Proceedings

Petitioner filed a Note of Issue and Certificate of Readiness on June 3, 2024, indicating that all known discovery was complete and that the matter was ready for trial. Thereafter, a Pretrial Order issued on November 25, 2024 (Pretrial Order), which established deadlines for the exchange and filing of exhibits and pretrial submissions, and also directed that the parties attend a pretrial conference at 2:15 p.m. on February 25, 2025, in-person at the courthouse. Petitioner complied with the submission deadlines contained in the Pretrial Order, but none of the Objectants served or filed pretrial documents or requested from the court an extension of any of the deadlines contained in the Pretrial Order. Only counsel for Petitioner appeared at the pretrial conference. No other party requested an adjournment or otherwise communicated with the court regarding the conference. Thereafter, the court issued an Order on March 11, 2025, which set April 24, 2025, at 10:00 a.m., as the date and time for the in-person trial of this proceeding (March 2025 Order). The March 2025 Order directed that there would be no adjournment of the trial date without prior court approval and that the failure of any party to appear in-person for the trial on April 24, 2025, ready to present witnesses and evidence, could result in sanctions, including dismissal of the petition or the objections or the entry of a default judgment or decree.

On April 21, 2025, three days before the date of the trial, the court was contacted by Patricia about the upcoming trial. This telephone call prompted the court to send correspondence to all parties reminding them that the trial in this proceeding was scheduled to begin on April 24, 2025, and would continue as needed through Friday, April 25, 2025. This correspondence also noted that all Objectants had failed to: 1) comply with the deadlines imposed by the Pretrial Order, 2) request the extension of any deadlines imposed by that Order, 3) attend the Pretrial conference at the courthouse on February 25, 2025, and 4) communicate with the court

4

concerning the March 2025 Order. The court specifically noted that, to date, the court had not received any requests for an adjournment of the trial dates and explained that any request for an adjournment would have to be made in writing, copied to all parties, and include an explanation as to why such request was being made on the eve of trial. Finally, the court stated that it would consider any request by a party to appear at trial by virtual means, if the request was made in advance of the scheduled trial date.

The Trial

At the trial on April 24, 2025, Petitioner and her counsel appeared virtually. After the court was on the record, Patricia and Dina joined the trial also virtually. However, Dina joined only with audio so she was not visible to the court or the other parties. The parties had an off the record discussion about the possibility of settling this matter outside the presence of the court. After being informed that no settlement could be reached, the court proceeded with the trial over the objection of Dina, who made repeated oral requests for an adjournment of the trial, which the court denied.[2]

The court then invited opening statements, and Petitioner's counsel, Patricia and Dina gave their statements. However, Dina's statement offered no roadmap of what she intended to prove at trial. Instead, Dina complained at length about delays in the resolution of her objections and the administration of this estate, while also continuing to request an adjournment of the trial

---

[2] The record reflects that Dina ignored repeated directions by the court to let others finish speaking and continuously interrupted others, including the court. This behavior was consistent with Dina's demeanor during court conferences and other prior communications with the court.

for several reasons, including that she wished to retain counsel.[3] After the court denied Dina's last adjournment request, she elected to end her participation in the trial by abruptly disconnecting.

Thereafter, the trial continued, and Petitioner called herself as her sole witness and testified that her account was accurate and complete. Petitioner offered only two exhibits at trial: the Amended Account together with the affidavit of the accounting party and Petitioner's Notice to Admit with attached exhibits. Petitioner's Amended Account was received into evidence and the court reserved decision on the issue of whether the Notice to Admit with attached exhibits could be admitted into evidence. Petitioner then rested her case. In response, neither Patricia (nor Dina, before leaving the proceedings) offered any evidence, either documentary or testimonial.[4] Nor did they object to any document Petitioner offered into evidence. There having been no objection at trial to the admission of the Notice to Admit and the exhibits attached to it, the court receives these exhibits into evidence (*see Burrell v West*, 163 AD3d 660 [2d Dept 2018]; *Central Nassau Diagnostic Imaging, P.C. v GEICO*, 28 Misc 3d 34 [App Term, 1st Dept 2010]).

Notwithstanding, Petitioner's introduction of the Amended Account and her testimony as to its completeness, which generally is sufficient to meet an accounting fiduciary's burden to establish that she has accounted for all estate assets (*see Matter of Schnare*, 191 AD2d 859, 860 [3d Dept 1993], *lv denied* 82 NY2d 653 [1993]), the court inquired into three items in the account: 1) Petitioner's loan to the estate in the amount of $27,993.27 as reflected on Schedules

---

[3] As previously stated, Dina has participated in this proceeding as a self-represented party since October 4, 2022, and has done so notwithstanding the court's advising Objectants, including Dina, as late as October 23, 2023, of the benefits of retaining counsel to assist them with the discovery process.

[4] Patricia did cross-examine Petitioner.

AA and D; 2) Petitioner's charges to the estate for attorneys fees for which there is no supporting affirmation of legal services in the record substantiating the reasonableness of those fees; and 3) Petitioner's request for commissions in view of the fact that no distributions have been made in the more than 31 years since decedent died. The court noted that under *Stortecky v Mazzone*, 85 NY2d 518 [1995], it had inherent authority to inquire into the contents of an account of a fiduciary even where the account is uncontested. In *Matter of Sakow* (21 AD3d 849 [1st Dept 2005]), the Appellate Division, First Department, relied on *Stortecky* to conclude that even when there is a trial in a contested accounting proceeding and the objectants present no proof to support their objections, and even if they fail to cross-examine witnesses, "the Surrogate has the power to initiate an inquiry into items of the account before approving them" (*id.* at 850).

After a brief recess requested by Petitioner, her counsel informed the court and the parties on the record that Petitioner was withdrawing her request for commissions and her request to be reimbursed for the loan she claimed she had made to the estate. As to the missing affirmations of legal services substantiating the attorneys fees incurred by Petitioner, her counsel asked for time to consult with the non-party law firms to whom those fees had been paid. The court granted that application and allowed Petitioner until May 15, 2025, to file any affirmations of legal services in support of her request for the approval of those fees. However, Petitioner did not file any affirmations of services by the deadline imposed.

Discussion

After considering the evidence admitted, and in particular the Amended Account, as modified by Petitioner during trial to withdraw her request for reimbursement of her loan to the estate and her claim for commissions, and after assessing Petitioner's credibility, the court finds that Petitioner met her initial burden to establish that she accounted for all estate assets (*see*

7

*Matter of Schnare*, 191 AD2d at 860; *Matter of Rudin*, 34 AD3d 371, 372 [1st Dept 2006] [accounting fiduciary establishes prima facie case by submitting to the court the account and supporting affidavit]). In response, Objectants failed to meet their affirmative burden of coming forward with any evidence, either by documents or through testimony, to establish that the Amended Account was neither accurate nor complete except with respect to their claims concerning Petitioner's attorneys fees and delays in the administration of this estate, which will be addressed below (*Matter of Schnare*, 191 AD2d at 860).

Attorneys Fees

In an accounting proceeding, the petitioning fiduciary has the burden of establishing the reasonableness and the value of the legal services rendered (*see Matter of Wolf*, 67 AD2d 930 [2d Dept 1979]). However, the Surrogate has the ultimate responsibility of determining the compensation of attorneys who provide legal services to fiduciaries (*see* SCPA 2110; *Matter of Stortecky*, 85 NY2d at 526; *Matter of Marsh*, 265 AD2d 253 [1st Dept 1999]). In doing so, the court is "not required to provide detailed calculations for its fee award" (*Matter of Hofmann*, 38 AD3d 366, 367 [1st Dep 2007]); *see Matter of Guattery*, 278 AD2d 738, 739 [3d Dept 2000]). It is well established that Petitioner must file an affirmation that establishes the basis for the fees requested (22 NYCRR 207.45[a]; *Matter of Verplanck*, 151 AD2d 767 [2d Dept 1989]). Nevertheless, accountings are equitable in nature and the court may credit certain claimed payments or expenses even when not fully documented by Petitioner's records (*see O'Mahony v Whiston*, 2023 NY Slip Op 30482[U] [Sup Ct, NY County 2023][court credited a percentage of expenses claimed in accounting, despite numerous problems and "shoddy" recordkeeping, noting that it would be "inequitable to summarily surcharge" the entire disputed amount], *affd* 224 AD3d 609 [1st Dept 2024]).

8

Further, in determining the reasonableness of such fees, the court considers the familiar non-exclusive "Freeman/Potts" criteria (*see Matter of Potts*, 123 Misc 346 [Sur Ct, Columbia County 1924], *affd* 213 App Div 59 [4th Dept 1925], *affd* 241 NY 593 [1925]; *Matter of Freeman*, 34 NY2d 1 [1974]). Among the factors courts consider are the:

> "time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability, and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibilities involved" (*Matter of Freeman*, 34 NY2d at 9).

The court now applies these principles to fix the legal fees itemized on Schedule C of the Amended Account for which approval is sought.

### *Farrell Fritz, P.C. (Farrell Fritz)*

Farrell Fritz appeared for Petitioner in this proceeding on September 2, 2021, and continues to serve as her counsel and represented her at trial. Schedule C of the Account reflects that Petitioner seeks, at this time, approval of $5,626 for fees and disbursements that Petitioner paid to Farrell Fritz. The firm's Affirmation of Legal Services and contemporaneous time records, which cover services rendered from August 26, 2021, through the end of the accounting period, December 31, 2021, reflect that two attorneys and one paralegal provided more than 33 hours of legal services, for a total amount of fees and disbursements of $7,804.98, with a blended billable rate of $235.00. After examining the attached time records, the court concludes that Farrell Fritz's time entries reflect work that needed to be performed during this time, in connection with a variety of matters related to the estate, including communicating with former counsel for the Petitioner, corresponding with the parties and the court, reviewing the objections, drafting communication to the IRS, reviewing Petitioner's document production, collecting and

9

reviewing documentation concerning estate assets, and drafting and filing the petition to amend Petitioner's letters of administration. The time entries adequately describe the legal services provided and the time spent on tasks, even when multiple tasks were performed, and the court concludes that the approval of the requested amount of $5,626 is warranted. Court approval of the balance of Farrell Fritz's legal fees and disbursements is not requested at this time and thus is not addressed here.

### Other Legal Fees

The remainder of Petitioner's itemized legal expenses on Schedule C of the Amended Account fall under two categories: (1) legal fees paid more than eighteen years ago and identified only by the phrase "legal fees on account;" and (2) legal fees paid to three identified counsel or firms but that are not supported by any affirmation of legal services or contemporaneous time records.

### "Legal Fees on Account"

Schedule C of the account reflects that Petitioner seeks approval of $10,500 paid for "legal fees on account" that she paid between 1998 and 2007. There are three entries that fit this category, and those entries are incorporated into Schedule C through Exhibit B to the Amended Account. The recipients of these payments, as well as the services they provided, are nowhere identified in the Amended Account or any other submission. Under these circumstances, Petitioner has failed to substantiate these three entries and that the legal services performed were a reasonable and proper administration expense. Approval of $10,500 for "legal fees on account" is thus denied.

[* 10]

[* 11]

*Dominick Burrascano, Esq. (Burrascano)*

Petitioner also seeks approval of an October 21, 2015 payment for legal services to Burrascano in the amount of $1,000 but failed to file an affirmation of legal services or contemporaneous time records explaining the services performed by this lawyer. Nor did Petitioner describe in another accounting schedule or submission the nature of the services Burrascano provided to her as fiduciary. An examination of the prior proceedings before the court reflect that Burrascano filed the application seeking the issuance of letters of administration to Petitioner in 1994 and also filed an attorney affirmation in response to Dina's 2006 application to compel Petitioner to account. Additionally, the court's examination of the exhibits admitted at trial, reveals correspondence from Burrascano to Petitioner, and to other counsel later retained by Petitioner, which reflect that Burrascano: 1) assisted Petitioner with the marshalling of estate assets, including stock certificates in the name of the estate, 2) established a checking account titled in the name of the estate by which federal and state estate income tax were paid, 3) provided Petitioner with a list of estate assets and accounts and their value as of June 26, 2006, and 4) transmitted copies of estate account passbooks and brokerage accounts statements to Senerchia & Kelly, P.C., a firm that later represented Petitioner. Based upon this evidence, the court finds that the fee of $1,000 paid to Burrascano was a reasonable and proper administration expense.

*Senerchia & Kelly, P.C. (Senerchia & Kelly)*

Schedule C of the account reflects that Petitioner seeks approval of $5,322.01 for legal fees paid to Senerchia & Kelly. Senerchia & Kelly replaced Burrascano as Petitioner's counsel on February 2, 2007. The firm continued to represent Petitioner until September 2, 2021, when she retained Farrell Fritz. Schedule C reflects that Petitioner made a total of six payments to

11

Senerchia & Kelly, beginning on April 16, 2013, and ending on January 13, 2020. Senerchia & Kelly filed the petition for the judicial settlement of Petitioner's Account, for the period from November 2, 1993 through February 28, 2007, and assisted another of Petitioner's attorneys, Andrew M. Krisel, Esq. with court-mandated settlement discussions in 2019 and the exchange of informal discovery. The court, however, failed to receive any affirmation of legal services or contemporaneous time records, in support of the services performed by Senerchia & Kelly. Nor did Petitioner indicate in another accounting schedule or other filing what services this firm provided to her as fiduciary. Even though Petitioner has failed to sufficiently substantiate the services performed by this firm, the court may award an amount consistent with a quantum meruit analysis, or the reasonable value of the legal services rendered when it is clear from the record that counsel provided services and the client does not dispute that counsel expected compensation for those services (*see Matter of Feroleto*, 6 Misc 3d 680, 684 [Sur Ct, Bronx County 2004]; *Matter of Glusing*, 84 Misc 3d 171, 178 [Sur Ct, Monroe County 2024]). The record in this court reflects that Senerchia & Kelly filed Petitioner's Account and was involved in settlement discussions, and the court concludes that fees paid to this firm are a legitimate administration expense. The court finds that the reasonable value of the legal services rendered by this firm is $ 5,322.01.

### *Andrew M. Krisel, Esq (Krisel)*

Petitioner also seeks approval of a $1,500 payment to Krisel for legal services rendered on or around January 2020. Petitioner filed no affirmation of legal services, nor contemporaneous time records, explaining the services performed, but the court notes that Krisel filed a notice of appearance for Petitioner in this proceeding on August 27, 2019, identifying himself as "of counsel" to Senerchia & Kelly. Thereafter, he actively participated in three

12

settlement conferences with the court in August of 2019 and September and December of 2020. Krisel assisted Petitioner with those settlement discussions and supplied Dina, then the sole Objectant, with informal discovery, working to address issues raised by her objections. In light of Krisel's participation in court-mandated settlement conferences and the other services provided as witnessed by the court, Petitioner's request for approval of the $1,500 legal fee paid to Krisel is granted because such expense was a reasonable and proper administration expense.

*Petitioner's Request for Reserve for Legal Fees*

Petitioner's request on Schedule J for approval of $25,000 identified as a "reserve for legal fees," presumably for legal services rendered outside the accounting period, is denied (*see Matter of Cook*, 41 AD2d 907 [1st Dept 1973][no evidence of legal services beyond the date of the intermediate accounting was offered, and claims for compensation rendered outside that period should await future determination], *affd* 33 NY2d 919 [1973]; *Matter of Lynch*, 258 AD2d 1060 [2d Dept 1940]).

## Delays in the Estate's Administration

Without a doubt, the administration of this estate has been plagued with delays. As previously mentioned, to date, Petitioner has failed to make distributions to any of decedent's distributees. Even though it does not condone the actions of Petitioner, the court cannot conclude on this record that the delays in administration and distribution are the product of Petitioner's gross negligence or bad faith. In view of the totality of the circumstances here, including Petitioner's testimony, which the court credits, that the delays in administration may have been caused by Dina's conduct, and also in view of Petitioner's unilateral waiver of commissions, the court declines to exercise its discretion to impose interest as a surcharge for

13

such delays in this accounting proceeding (*see Matter of Zane*, 137 AD3d 926, 928 [2d Dept 2016] [fiduciary accounting proceedings are equitable in nature and any award of interest is in the court's discretion; the court did not abuse its discretion in declining to award interest where delay in distribution were attributable in part to the conduct of objectants]).

Other Objections

As noted above, Objectants failed to meet their affirmative burden to provide any evidence in support of the balance of their objections. Accordingly, those objections are dismissed.

Conclusion

In accordance with the preceding discussion, Petitioner's Amended Account is settled as modified at trial by Petitioner's unilateral renunciation of her claim for commissions and reimbursement of her loan. However, Petitioner is surcharged $10,500 as a result of the court's disallowance of the payment in that amount for attorneys fees to unknown lawyers or firms, as reflected on Exhibit B of Schedule C. With respect to the $10,500 disallowed, Petitioner would be responsible for making the estate whole. Here, she has voluntarily done so through her agreement to forego her commissions in the amount of $9,649.70. As to the difference between the amount disallowed ($10,500) and the waived commissions ($9,649.70), that is, $850.30, Petitioner must reimburse the estate that sum.

Petitioner is directed to settle a decree for the Amended Accounting, for the accounting period of November 2, 1993 through December 31, 2021, in accordance with this Decision, on all parties who have appeared in this proceeding.

The Clerk of the Court is directed to mail a copy of this decision to the parties whose names and addresses appear below.

Dated: October 8, 2025

_____
SURROGATE

TO:

Edward D. Baker, Esq.
*Attorneys for Debra Cressotti*
Farrell Fritz P.C.
400 RXR Plaza
Uniondale, NY 11556

Dina M. Careccio
*Administrator Estate of Ruth Careccio*
*Pro Se Objectant*
P.O. Box 506
Midland Park, NJ 07432

Randall W. Haschke, D.O.
*Pro Se Objectant*
5808 East Brown Road, #145
Mesa, AZ 85205

Robert H. Haschke
*Pro Se Objectant*
1526 Adam Circle
Largo, FL 33771

Patricia Meehan
*Pro Se Objectant*
315 East 72nd Street, Apt. 17B
New York, NY 10021